**In the Matter of the WELFARE OF N.J.S., Child.**

No. A06–2277.

Supreme Court of Minnesota.

July 31, 2008.

Sara L. Martin, Assistant State Public Defender, St. Paul, MN, for appellant N.J.S.

Lori Swanson, Attorney General, St. Paul, MN, Timothy R. Faver, Beltrami County Attorney, Dana D. Erickson, Assistant Beltrami County Attorney, Bemidji, for respondent.

## OPINION

MEYER, Justice.

Appellant N.J.S. was 15 years old when he was charged with second-degree murder, Minn.Stat. § 609.19, subd. 1(1) (2006), for the shooting death of his grandmother. The State of Minnesota filed a motion to

certify appellant for adult prosecution under Minn.Stat. § 260B.125 (2006). This statute requires a court to consider six factors in determining whether to certify a juvenile. *Id.*, subd. 4. One of these factors is "the child's prior record of delinquency." *Id.* Appellant had no prior delinquency petitions or adjudications, but the district court considered evidence of his behavioral incidents at school as part of his "prior record of delinquency." The district court concluded that all six factors weighed in favor of certification and certified appellant for adult prosecution. The court of appeals affirmed. *In re Welfare of N.J.S.*, No. A06–2277, 2007 WL 2417265 (Minn.App. Aug.28, 2007). We affirm the certification for adult prosecution, but we reverse the court of appeals' determination that school records can be part of the "prior record of delinquency."

Appellant was born May 14, 1990, and was raised from the age of approximately 18 months by his grandparents and legal guardians, Marilyn and Ted Shutter. In December 2004, the Shutters began taking appellant to the Mississippi Mental Health Center for outpatient treatment. He was seen by a psychologist for individual counseling, and by a nurse practitioner for treatment by medication. He was diagnosed with attention deficit hyperactivity disorder (ADHD), impulse control disorder, and specific learning disability. His intellectual functioning was determined to be below average. In September 2005, after a suicide attempt, appellant was voluntarily admitted to a residential program for approximately one month, during which time he attended the Minnesota Learning Center. While at the program, he again attempted suicide and was sent to Children's Hospital in Minneapolis where he was medically treated. He was then discharged to his grandparents' home.

On Thanksgiving day, November 24, 2005, after relatives left his grandparents' home, appellant was downstairs playing on the computer. When appellant came upstairs, he pretended to take his medication and went to his grandparents' bedroom. There he took a gun and ammunition, and waited for approximately 15 minutes with the lights off for his grandparents to settle in to watch television in the living room. Then he entered the living room and shot his grandmother in the back of the head while she was watching television. He dropped the gun and called 911. Appellant claimed that he had not intended to kill his grandmother, but rather he had simply shot at the couch with the intent to scare her into giving him the computer password so he could access internet pornography.

Appellant was initially found mentally incompetent to proceed pursuant to Minn. R.Crim. P. 20. When he later became competent, the State moved to certify him as an adult pursuant to Minn.Stat. § 260B.125. The juvenile court ordered a certification study.

At the certification hearing, the State acknowledged that prior to the November 24, 2005, incident appellant had never been charged or adjudicated delinquent. Nicole Kern, a juvenile probation officer, completed a certification study and testified about her recommendation in favor of certification at the hearing. Kern testified about the evidence on each of the six factors that a court must consider in making the certification determination under Minn.Stat. § 260B.125, subd. 4. The six factors are seriousness of the offense, culpability of the child, prior record of delinquency, programming history, adequacy of punishment or programming in the juvenile system, and dispositional options available. *Id.* Ted Shutter testified that he did not

want to see his grandson certified for adult prosecution.

When the State sought to elicit testimony regarding uncharged behavior reflected in school and institutional disciplinary records, appellant objected, arguing that based on the plain language of Minn.Stat. § 260B.125, subd. 4(3), this evidence was not relevant to his "prior record of delinquency" because the behavior did not constitute a crime and because the behavior had never been the subject of a delinquency proceeding. The juvenile court overruled appellant's objection and received evidence of numerous uncharged incidents reflected in his school and institutional disciplinary records.

The juvenile court issued written findings of fact, conclusions of law, and an order certifying appellant as an adult. With regard to appellant's prior record of delinquency, it found that although he had no prior delinquency involvement with the juvenile court, his school and institutional records reported behavioral incidents.

The juvenile court found that in elementary school appellant hit his peers when he was teased. Additionally appellant had difficulties with following directions and would at times become oppositional. While attending Bemidji Middle School, appellant was repeatedly caught using the school computers to access internet pornography. Appellant was disciplined for inappropriately using the school computer on six separate occasions. The school attempted to stop appellant's behavior by limiting his access to computers, but he did not comply with these restrictions. Additionally, appellant was suspended from school at the end of April 2005 for apparently inappropriately touching a female peer.

The juvenile court further found that appellant continued to have problems at Voyageur High School. During the few months appellant attended that school, he was involved in the following five behavioral incidents: In September 2005, appellant left the school without permission. In October 2005, appellant used a teacher's computer to access internet pornography. On November 8, 2005, appellant left his classroom and was found in the school music room with the lights off. Appellant refused to leave the room and asked to see his doctor because he was "thinking bad thoughts" and wanted to kill himself. The next day, November 9, 2005, appellant again left his classroom and was found in the school music room with the lights off. As appellant was leaving the music room, he struck a peer. Less than a week later, on November 14, 2005, appellant was again found using a teacher's computer to access internet pornography.

The juvenile court also found that during the eleven days appellant attended the Minnesota Learning Center while at the adolescent unit of the Brainerd Regional Human Services Center, he had six behavioral incidents, including being disciplined once for threatening behavior, once for disrespectful behavior, and four times for noncompliant behavior.

Based on the above findings, the juvenile court concluded that the prior-record-of-delinquency factor slightly favored certification. It further concluded that seriousness of the offense and appellant's history of failed programming weighed heavily in favor of certification. The juvenile court also concluded that appellant's culpability, and the inadequacy of the juvenile justice system's available punishment or programming weighed in favor of certification.

On appeal, appellant argued that the plain language of Minn.Stat. § 260B.125, subd. 4(3), prohibited the juvenile court from considering the uncharged behavior reflected in school and institutional disci-

plinary records when evaluating the prior-record-of-delinquency factor.[1] *N.J.S.*, 2007 WL 2417265 at *2. He further argued that the State had failed to present sufficient evidence that certification was necessary to protect public safety. *Id.* at *3. The court of appeals affirmed, *id.* at *4, and we granted review.

## I.

The first issue is whether under Minn. Stat. § 260B.125 a juvenile court may consider uncharged behavior reflected in school and institutional disciplinary records when evaluating the prior-record-of-delinquency factor for certification as an adult. We review questions of statutory interpretation de novo. *State v. Engle,* 743 N.W.2d 592, 593 (Minn.2008). Where the language of a statute is unambiguous, "'the letter of the law shall not be disregarded under the pretext of pursuing the spirit'" of the law. *State v. McCoy,* 682 N.W.2d 153, 158 (Minn.2004) (quoting Minn.Stat. § 645.16 (2006)).

■ The general rule is that children alleged to have committed an offense remain within the juvenile system. Minn. Stat. § 260B.101, subd. 1 (2006). A juvenile court can certify a child 14 years of age or older for adult prosecution, Minn. Stat. § 260B.125, subd. 1, only if the prosecuting authority demonstrates "by clear and convincing evidence that retaining the proceeding in the juvenile court does not serve public safety," *id.,* subd. 2(6)(ii). For purposes of the certification hearing, the charges against the child are presumed to be true. *In re Welfare of W.J.R.,* 264 N.W.2d 391, 393 (Minn.1978).

Minnesota Statutes § 260B.125, subd. 4, provides:

In determining whether the public safety is served by certifying the matter, the court shall consider the following factors:

(1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;

(2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;

(3) the child's prior record of delinquency;

(4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice system; and

(6) the dispositional options available for the child.

When weighing these six public safety factors, the juvenile court "shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency." *Id.*

Appellant argues that the plain language, "prior record of delinquency," only allows consideration of adjudicated conduct, not behavior problems generally. He defines "delinquency" as "juvenile delinquency," an offense or a misdemeanor. If we find the statute ambiguous, he argues that we should interpret "delinquen-

1. The concurrence wonders whether appellant's uncharged behavior could have been used when evaluating factors two and five (level of culpability and adequacy of punish-

ment or programming available in the juvenile system). This issue was not presented to the courts below or to us and, therefore, we do not address it.

cy" to include only adjudicated conduct, because penal statutes must be resolved in favor of lenity for the defendant. Appellant further contends that admitting school disciplinary records is problematic because the defendant often has no possibility of challenging or assessing the evidence.

The State argues that a "prior record of delinquency" may encompass unadjudicated conduct. The State asserts that "delinquency" is ambiguous, because it can mean something as vague as "misdeed," and contends that public policy favors considering nonadjudicated evidence so that juvenile courts can better assess the public safety risk.

The phrase "record of delinquency" is not defined nor is there a definition of the words "record" or "delinquency" in chapter 260B. A "delinquent child" is a child who has violated a federal, state, or local law or who has escaped from a juvenile correctional facility. Minn. Stat. § 260B.007, subd. 6 (2006). The definition of "delinquent child" provides:

"[D]elinquent child" means a child:

(1) who has violated any state or local law, except as provided in section 260B.225, subdivision 1 [traffic offenses], and except for juvenile offenders as described in subdivisions 16 to 18 [petty offenses, underage drinking, certain drug offenses];

(2) who has violated a federal law or a law of another state and whose case has been referred to the juvenile court if the violation would be an act of delinquency if committed in this state or a crime or offense if committed by an adult;

(3) who has escaped from confinement to a state juvenile correctional facility after being committed to the custody of the commissioner of corrections; or

(4) who has escaped from confinement to a local juvenile correctional facility after being committed to the facility by the court.[2]

Minn.Stat. § 260B.007, subd. 6(a). To be a "delinquent child," a child must have violated a law.

The words "delinquent" and "delinquency" are consistently used in chapter 260B with reference to the violation of laws and the adjudication of petitions alleging such violations. *See, e.g.,* Minn.Stat. § 260B.141, subd. 4 (2006) (referring to petition in juvenile court as "delinquency petition"); Minn.Stat. § 260B.157, subd. 1 (2006) (investigations to be conducted when child is "found to be delinquent"); Minn.Stat. § 260B.198, subd. 1 (2006) (dispositions available "[i]f the court finds that the child is delinquent"). In addition, the chapter's statement of purpose links being "delinquent" to formal allegations and adjudications: "[t]he purpose of the laws relating to children *alleged or adjudicated to be delinquent* is to promote the public safety and reduce juvenile delinquency by maintaining the integrity of the substantive law prohibiting certain behavior and by developing individual responsibility for lawful behavior." Minn.Stat. § 260B.001, subd. 2 (emphasis added). Given that chapter 260B links being "delinquent" to formal allegations and adjudications, we cannot conclude that the use of the word "delinquency" carries the broad meaning of "misdeed."

Nor does chapter 260B define the word "record," although it does contain specific provisions concerning the maintenance and disclosure of records made in juvenile court. Minn.Stat. § 260B.171 (2006). The word "record" is used in the chapter to refer to information created in the juvenile

---

2. A child over 16 who is alleged to have committed first-degree murder is explicitly excluded from the definition of "delinquent child." Minn.Stat. § 260B.007, subd. 6(b).

court system through a petition and an adjudication. *See, e.g., id.,* subd. 1(a) (requiring the juvenile court to keep "records pertaining to delinquent adjudications" and to provide copies upon request from another juvenile court, adult court, law enforcement agencies, etc., in certain circumstances).

The colloquial use of the word "record" also informs our decision. *See Duluth St. Ry. Co. v. Fid. & Deposit Co. of Md.,* 136 Minn. 299, 302–03, 161 N.W. 595, 596 (1917) (exploring colloquial use of "holdup" to mean "any form of robbery by the use of force"). We have used the word "record" to mean court records of a criminal history. *See, e.g., State v. Henning,* 666 N.W.2d 379, 382 (Minn.2003) (using the expression "prior record" to refer to appellant's criminal history); *State v. Hathaway,* 379 N.W.2d 498, 504 (Minn.1985) (referring to the "prior record of convictions" referenced in Minn. R.Crim. P. 9.01 simply as "prior records"); *State v. Gist,* 358 N.W.2d 664, 667 (Minn.1984) (noting that a defendant's "prior record" is used to determine his criminal history score); *State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982) (referring to a lack of criminal history as a "clean record").

▉ We conclude that "prior record of delinquency" unambiguously refers to records of petitions to juvenile court and the adjudication of alleged violations of the law by minors. Applying this definition of "prior record of delinquency" to the case

at hand, it is undisputed that appellant's behavior was not the subject of any petition to the juvenile court, nor was it the subject of any juvenile court adjudication. It was, therefore, error to consider uncharged behavior reflected in school and institutional records when evaluating the prior-record-of-delinquency factor.[3]

## II.

▉ Having determined that the district court erred in considering appellant's school and institutional records as a "prior record of delinquency," one of the two more heavily weighted factors, we must consider whether the error requires reversal of the district court's certification order.

▉ This court does not disturb a finding that public safety would be served by certification unless it is clearly erroneous. *In re Welfare of D.M.D.,* 607 N.W.2d 432, 437 (Minn.2000) (citing *In re Welfare of J.F.K.,* 316 N.W.2d 563, 564 (Minn.1982)). As the prior record of delinquency is one of six factors, whether the error requires reversal depends on the weight given to the inadmissible records and the weight given the five other factors.

The district court found that all six factors weighed in favor of certification, but the third factor only slightly so. Appellant argues that the district court clearly erred in finding that all the other factors

---

**3.** The court of appeals seemed to indicate that even though the school records are not records of delinquency, they could be used because "Minn.Stat. § 260B.125, subd. 4, does not purport to be an exclusive list of the factors that a district court may consider in determining whether public safety is served by certification." *N.J.S.,* 2007 WL 2417265 at *2. The statute gives six factors to be considered in deciding whether a particular child should be prosecuted as an adult, and directs that two of them be given greater weight.

Minn.Stat. § 260B.125, subd. 4. There is no indication that other factors may be considered—only the obligation to consider the six enumerated factors. Consideration of other factors would risk applying the exception of certification to cases that the legislature intended to remain in juvenile court. We therefore conclude that Minn.Stat. § 260B.125, subd. 4, provides the exclusive list of factors that a court may consider in determining whether public safety is served by certification.

weighed in favor of certification. We disagree.

It is undisputed that the first factor, "seriousness of the alleged offense," weighed in favor of certification. There was ample evidence to support the district court's conclusion that the second factor, "culpability of the child," weighed in favor of certification, despite appellant's "significant behavioral and mental impediments" recognized by the district court. Those impediments did not prevent him from planning and carrying out the shooting by himself.

There was also evidence to support a conclusion that the fourth factor, "programming history," weighed in favor of certification. Appellant demonstrated defiant and uncooperative behavior during his detention and civil commitment, as well as during pre-offense voluntary programming. Appellant argues that these records should not be considered as part of his programming history. We conclude that there was no error in considering these records as part of his programming history.

Likewise, there is evidence to support the district court's conclusion that the fifth and sixth factors, "adequacy of the punishment or programming available in the juvenile justice system" and "dispositional options available for the child," weigh in favor of certification. Based on appellant's programming history, the district court concluded that there would not be enough time to treat him under extended juvenile jurisdiction in any of the juvenile system's facilities.

We conclude that the district court determination that the five other factors all weighed in favor of certifying appellant for adult prosecution is not clearly erroneous. Because only one factor, the "prior record of delinquency," weighed against certification, it was not an abuse of discretion to certify appellant for adult prosecution.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

PAGE, Justice (concurring).

I concur in the result. I write separately to note that, while it is clear that N.J.S.'s school and institutional disciplinary records are not "prior records of delinquency," it is not clear to me that those records could not have been used under Minn.Stat. § 260B.125, subd. 4, to inform the court's consideration of factors two and five.