*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0514**

In the Matter of the Welfare of: C. K. R.

**Filed November 3, 2014
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-JV-13-2173

Cathryn Middlebrook, Chief Appellate Public Defender, Danail M. Mizinov, Special Assistant Public Defender, St. Paul, Minnesota (for appellant child)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent state)

Considered and decided by Hooten, Presiding Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The state alleges that C.K.R., a juvenile, committed various criminal offenses based on evidence that he seriously injured a man during a street fight. The state sought to certify C.K.R. for prosecution as an adult. The juvenile court granted the motion for certification. We conclude that the juvenile court did not err in its findings of fact and

did not abuse its discretion in concluding that certification is appropriate.  Therefore, we affirm.

## FACTS

This case arises out of a street fight in a St. Paul neighborhood on August 4, 2013. When police officers arrived at the scene, they found an unresponsive man on the ground, bleeding from his nose and his mouth, with his pants removed.  Witnesses told police officers that several girls who were at a nearby party began fighting outside and that a crowd gathered to watch.  When the victim wandered into the crowd, a young male approached him and struck him on the head with a can inside a sock, knocking him to the ground.  A second person hit and stomped on the victim, and a third person removed the victim's pants.  One witness told police officers that the three assailants made gang-related comments during the assault.  The investigation led police to suspect that C.K.R. was the person who initiated the assault.  The victim now suffers from permanent injuries, including brain damage.

At the time of the incident, C.K.R. was 15 years old.  The state charged him in juvenile court with one count of aiding and abetting first-degree assault, in violation of Minn. Stat. § 609.221, subd. 1 (2012); one count of aiding and abetting first-degree aggravated robbery, in violation of Minn. Stat. §§ 609.245, subd. 1, .05, subd. 1; and two counts of crime for a benefit of a gang, in violation of Minn. Stat. §§ 609.229, subd. 2, .229, subd. 3(a), .245, subd. 1. The state also moved to certify C.K.R. to stand trial as an adult.

While the state's certification motion was pending, two psychologists and a probation officer evaluated C.K.R. The juvenile court held an evidentiary hearing on the certification motion on two days in January 2014. The state presented the testimony of the victim's sister; a licensed psychologist, Patricia Orud, M.A.; and a probation officer, Ken Barber. C.K.R. presented the testimony of Mary Kenning, Ph.D., a clinical psychologist. In February 2014, the juvenile court issued a 24-page order in which it granted the state's motion. C.K.R. appeals.

## D E C I S I O N

C.K.R. argues that the juvenile court erred by granting the state's motion to certify him to stand trial as an adult.

As a general rule, a child who is alleged to have committed a criminal offense is prosecuted in juvenile court. *In re Welfare of N.J.S.*, 753 N.W.2d 704, 708 (Minn. 2008). But if a child is older than 14 years old and is alleged to have committed a felony, a juvenile court may certify the child to stand trial as an adult. Minn. Stat. § 260B.125, subd. 1 (2012). To certify a child between the ages of 14 and 16 to stand trial as an adult, the state must demonstrate "by clear and convincing evidence that retaining the proceeding in the juvenile court does not serve public safety." *Id.*, subd. 2(6)(ii); *see also In re Welfare of P.C.T.*, 823 N.W.2d 676, 685 (Minn. App. 2012), *review denied* (Minn. Feb. 19, 2013).

To determine whether adult certification would serve public safety, a juvenile court must consider the following factors:

(1)     the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;

(2)     the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;

(3)     the child's prior record of delinquency;

(4)     the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5)     the adequacy of the punishment or programming available in the juvenile justice system; and

(6)     the dispositional options available for the child.

Minn. Stat. § 260B.125, subd. 4 (2012). In weighing these statutory factors, a juvenile court must weigh all the factors together, giving greater weight to the first and third factors. *Id.*; *In re Welfare of J.H.*, 844 N.W.2d 28, 36 (Minn. 2014). This court applies a clear-error standard of review to a juvenile court's finding that public safety would be served by certification, *N.J.S.*, 753 N.W.2d at 710, and we apply an abuse-of-discretion standard of review to a juvenile court's ultimate decision to certify a child for trial as an adult in the district court, *J.H.*, 844 N.W.2d at 34.

In this case, the juvenile court found that the first, second, third, fourth, and fifth factors favored adult certification and that the sixth factor favored retaining the

4

proceedings in juvenile court. On appeal, C.K.R. challenges the juvenile court's findings concerning the first, second, third, and fourth factors.

## A.     First Factor: Seriousness of Offense

In analyzing the first factor, a juvenile court must assess "the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim." Minn. Stat. § 260B.125, subd. 4(1). This factor must be weighed more heavily than the other factors. *Id.*, subd. 4. A serious offense is any offense that "could have resulted in death or serious injury." *In re Matter of K.M.*, 544 N.W.2d 781, 785 (Minn. App. 1996). A crime committed for the benefit of a gang is considered a serious crime for purposes of certification. *J.H.*, 844 N.W.2d at 36.

In this case, the juvenile court relied on the reports and oral testimony of Orud, Barber, and Dr. Kenning, each of whom testified that the offense was serious. In considering the impact on the victim, the juvenile court noted that the assault inflicted permanent injuries on the victim, who struggles with speech, experiences weakness in motor skills, requires a cane to walk, and is unable to work or drive a vehicle. The juvenile court also relied on evidence that C.K.R. and the other two assailants voiced their gang affiliations during the assault.

C.K.R. challenges the juvenile court's reasoning on two grounds. First, he contends that his alleged offense is not serious because he delivered only a single blow to the victim and did not participate further in the attack. In *J.H.*, the supreme court rejected

a similar argument by a juvenile who was present during a sexual assault but did not touch the victim in any way. 844 N.W.2d at 36; *see also In re Welfare of J.H.*, 829 N.W.2d 607, 610 (Minn. App. 2013), *rev'd*, 844 N.W.2d 28 (Minn. 2014). In analyzing the seriousness of the offense, the supreme court considered the actions of all perpetrators and their collective impact on the victim. *See* 844 N.W.2d at 36. In this case, the juvenile court likewise considered the actions of all three perpetrators and their collective impact on the victim. Thus, the juvenile court did not err by considering C.K.R.'s participation in the offense to be serious even though he did not continue to assault the victim after delivering the first blow.

Second, C.K.R. contends that the juvenile court erred by relying on the aggravating sentencing factor of particular vulnerability. This sentencing factor potentially is relevant because the adult certification factors expressly permit a juvenile court to rely on aggravating factors that are recognized by the sentencing guidelines when considering the seriousness of the offense. *See* Minn. Stat. § 260B.125, subd. 4(1); *see also* Minn. Sent. Guidelines 2.D.3.b(1) (2014). But the existence of an aggravating factor is only one of several considerations in determining whether an offense is serious, and an aggravating factor is not necessary to a finding of seriousness. *Id.* In this case, the juvenile court also relied on other factors in finding that C.K.R.'s offense is serious, as described above. Regardless whether the juvenile court properly analyzed the aggravating sentencing factor, there is both a legal basis and a factual basis for the juvenile court's finding of seriousness.

6

Thus, the juvenile court did not err by finding that the seriousness of the alleged offense favors certification.

**B.      Second Factor: Culpability**

In analyzing the second factor, a juvenile court must assess "the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines." Minn. Stat. § 260B.125, subd. 4(2). In this case, the juvenile court found that C.K.R. was culpable because he was the instigator and because there were no mitigating factors.

C.K.R. contends that culpability should be assessed by considering only his own actions, which he describes as "an unprovoked blow to a passerby," and not by considering the entire incident. The caselaw indicates, however, that a juvenile court is not required to ignore the overall context when assessing a child's culpability. In *J.H.*, the supreme court concluded that the juvenile was culpable even though he did not directly engage in criminal sexual conduct with the victim. *See* 844 N.W.2d at 38. Instead, the supreme court agreed with the juvenile court's finding that the juvenile's conduct satisfied the culpability factor because it was "part of a horrific concerted effort." *Id.* (quotation marks omitted). Thus, the juvenile court in this case did not err by considering all aspects of the incident in which C.K.R. participated.

C.K.R. also contends that the juvenile court erred by not considering his lack of maturity. The record reflects that the juvenile court considered Dr. Kenning's testimony

7

about juvenile brain-development studies. But Dr. Kenning's testimony also contradicts C.K.R.'s contention because she opined that both the seriousness factor and the culpability factor favor either certification or extended juvenile jurisdiction (EJJ). The juvenile court found that the culpability factor weighed in favor of certification based on other evidence that C.K.R. was not impaired and was not coerced, and that finding is supported by the evidentiary record.

Thus, the juvenile court did not err by finding that C.K.R.'s culpability factor favors certification.

## C.     Third Factor: Record of Delinquency

In analyzing the third factor, a juvenile court must consider "the child's prior record of delinquency." Minn. Stat. § 260B.125, subd. 4(3). The third factor refers to "records of petitions to juvenile court and the adjudication of alleged violations of the law by minors." *N.J.S.*, 753 N.W.2d at 710. A record of gang-related misdemeanors weighs against certification. *P.C.T.*, 823 N.W.2d at 685; *St. Louis Cnty. v. S.D.S.*, 610 N.W.2d 644, 649 (Minn. App. 2000). This factor, like the seriousness factor, must be weighed more heavily than the other factors. Minn. Stat. § 260B.125, subd. 4.

In this case, the juvenile court found that this factor favors certification because C.K.R. had been the subject of 17 previous juvenile delinquency petitions, including three petitions alleging felonies. We have reviewed the confidential juvenile records and conclude that they support the juvenile court's finding. *See* Minn. Stat. § 260B.171, subd. 2(e) (2012) (providing that most juvenile court data is private until execution of

8

adult sentence); Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1(d) (2012) (providing that non-public records in appeal from juvenile court proceedings are not accessible by public).

The juvenile court also found that C.K.R.'s "violent behaviors in the community are escalating and involve gang associations." C.K.R. contends that, to the contrary, his juvenile delinquency record is "not the product of escalating behavior, but the result of escalating charging decisions by the State." He relies on Dr. Kenning, who testified that C.K.R.'s behavior is consistent, not escalating. We conclude that the juvenile court's finding is supported by the confidential juvenile records.

Thus, the juvenile court did not err by finding that C.K.R.'s juvenile-delinquency history weighs in favor of certification.

## D.     Fourth Factor: Programming

In analyzing the fourth factor, a juvenile court must consider "the child's programming history, including the child's past willingness to participate meaningfully in available programming." Minn. Stat. § 260B.125, subd. 4(4). The fourth factor favors certification if a juvenile has displayed "defiant and uncooperative behavior during his detention and civil commitment, as well as during pre-offense voluntary programming." *N.J.S.*, 753 N.W.2d at 711.

In this case, the juvenile court found that C.K.R. has "received a significant amount of programming through school, probation, and the community" but rarely, if ever, successfully completed that programming. The juvenile court noted that staff at the

9

Ramsey County juvenile-detention center have recorded numerous incidents during C.K.R.'s pre-trial detention in which he has been "belligerent and oppositional." C.K.R. contends that the juvenile court overlooked his past success with a "highly structured residential placement" and ignored the benefits of EJJ in avoiding recidivism. But the evidentiary record is replete with evidence of C.K.R.'s unsuccessful programming history.

Thus, the juvenile court did not err by finding that C.K.R.'s programming history weighs in favor of certification.

**E.      Summary**

To sum up, the juvenile court did not err in its findings concerning the first, second, third, and fourth factors. As stated above, C.K.R. does not challenge the juvenile court's finding with respect to the fifth factor. The juvenile court found that the sixth factor, dispositional options, favored prosecution in juvenile court. Accordingly, we review the juvenile court's decision to grant the state's motion based on the premise that the first, second, third, fourth, and fifth factors support certification.

We apply an abuse-of-discretion standard of review to the juvenile court's certification decision. *N.J.S.*, 753 N.W.2d at 711. C.K.R. does not appear to argue in the alternative that, if none of the juvenile court's predicate findings are erroneous, its ultimate decision is an abuse of discretion. In our review of the juvenile court's decision, we discern no abuse of discretion. The two most heavily-weighted factors, the seriousness of the offense and the record of delinquency, favor certification. *See* Minn.

Stat. § 260B.125, subd. 4. Five of the six factors favor certification, and the one factor that does not favor certification does not outweigh the other five factors.

In sum, the juvenile court did not clearly err in its findings of fact or abuse its discretion in concluding that certification would serve public safety. Thus, the juvenile court did not err by granting the state's motion to certify C.K.R. for trial as an adult.

**Affirmed.**

11