*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2079**

In the Matter of the Welfare of: J.C., Child.

**Filed June 8, 2015
Affirmed
Stauber, Judge**

Ramsey County District Court
File No. 62-JV-14-2252

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant J.C.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kathryn Richtman, Assistant County Attorney, Kayla McNabb, Certified Student Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant challenges an order of the district court certifying him to stand trial as an adult on felony charges of possession of a firearm and receiving stolen property. Because the district court properly applied the statutory certification factors and appropriately exercised its discretion in reaching its certification decision, and because the district court did not abuse its discretion by appointing a guardian ad litem, we affirm.

**FACTS**

Police were called to a St. Paul fast-food restaurant on September 3, 2014, after someone was seen carrying a gun. As they arrived, a group of 10 to 15 people dispersed, including appellant J.C., born on April 3, 1997, and two other juveniles, one of whom is a known gang member. When police directed them to stop, J.C. dug into his pants and threw a loaded gun magazine on the ground. After being placed in a squad car, J.C. also pulled something from his pants that fell to the floor. Police recovered a stolen handgun that matched the magazine they had already taken from J.C. After being advised of his rights, J.C. admitted that the gun was stolen, said that he was "holding the magazine for somebody," and when asked why he had the gun, he said, "for protection."

The state filed a juvenile delinquency petition charging J.C. with two felony offenses: possession of a firearm by an ineligible person and receiving stolen property. As J.C. had been adjudicated delinquent on a robbery charge in 2013, the state also moved for J.C.'s presumptive certification to stand trial as an adult. J.C. waived his right to have a parent present, and the district court appointed a guardian ad litem.

At the certification hearing, the district court received testimony from psychologist Patricia Orud, who had examined J.C. Her report establishes that J.C. was raised by a single "inconsistent and uninvolved" parent and was a frequent runaway. J.C. was involved in numerous juvenile offenses that escalated to the 2013 robbery offense and the current charges. He functions at a low-average intellectual level and has been diagnosed with severe conduct and cannabis-use disorders, and a moderate alcohol disorder.

Orud examined each of the statutory factors required for adult certification and concluded that four favored J.C.'s certification and two favored extended jurisdiction juvenile (EJJ) designation. While Orud concluded that the statutory factors favored J.C.'s adult certification, she nevertheless recommended that J.C. remain on EJJ status because of his "potential to redirect his functioning from his criminal lifestyle while under the external authority of the Court" and because "[t]he conditions necessary for change support[] a recommendation for processing this offense within the parameters of Extended Jurisdiction Juvenile status."

A contrary view was taken by an investigator for the Ramsey County Probation and Juvenile Office, who prepared a certification study that recommended J.C.'s certification to stand trial as an adult. The investigator reviewed the programming and services that were provided to J.C. and concluded that J.C. is dangerous and a risk to public safety. The investigator stated that although she did not reject Minnesota Correctional Facility-Red Wing (Red Wing) as a possible EJJ placement for J.C., she concluded that J.C. should be certified as an adult because of "his history with weapons and all the programming that had been done, as well as . . . his gang involvement."

J.C.'s probation officer for the 2013 robbery offense also testified, identifying the many services that had been offered to J.C. The probation officer placed J.C. at a high risk to reoffend, given his extensive and escalating delinquency history, and his history of failing to internalize offered services. The probation officer conceded that J.C.'s only felony-level adjudication involved the 2013 robbery, in which there were three accomplices, one of whom used a BB gun to commit the offense.

3

At the hearing, two dispositional placement alternatives were identified, depending on whether J.C. was certified as an adult or was assigned EJJ status. An intake coordinator for Red Wing testified that Red Wing offered programming options for youthful offenders, including mental-health and medical services, academics, a substance-abuse program, and cognitive restructuring. According to the intake coordinator, Red Wing is designed for Minnesota's most violent juvenile offenders, and EJJ inmates can remain there until age 21. Juveniles can refuse treatment at Red Wing, but they will not be released without completing treatment unless they are released due to age.

The program director at the Minnesota Department of Corrections also described a comparable program for youthful offenders under age 21 in prison that includes mandatory education, recreation, cognitive therapy three days per week, mental health therapy two days per week, and other services, such as chemical-dependency care. The program director stated that the program is voluntary after a prisoner reaches age 18 and that, at age 19, prisoners are no longer eligible to participate in the program.

The district court also heard testimony regarding J.C.'s mandatory and voluntary residential placements in the year before the current charges, one of which was termed "successful" and one from which he was discharged.

Finally, the district court heard testimony from the court-appointed guardian ad litem (GAL), who interviewed J.C. twice and reviewed his past history. The GAL recommended EJJ designation rather than commitment to prison because the GAL viewed programming options as better for J.C. outside of the prison system. On cross-

4

examination, the GAL admitted that this recommendation was treatment-based and did not include consideration of J.C.'s criminal record or punishment issues. He also identified particular instances where J.C.'s behavior made others unsafe, referencing two uncharged assaults.

In an order that comprehensively applies each of the six statutory factors, the district court concluded that three factors favored adult certification, including the seriousness of the offense, culpability of the child, and child's prior record of delinquency. The district court concluded that the three remaining factors favored EJJ designation, including programming history, adequate punishment and programming in the juvenile system, and dispositional options. The court specifically found that the availability and adequacy of punishment or programming in the juvenile justice system only "slightly" favored EJJ designation. The court concluded that the factors favoring adult certification outweighed the factors favoring EJJ designation, noting that two of the certification factors are required by statute to be given greater weight, and that J.C. did not meet his burden to demonstrate by clear and convincing evidence that he had overcome the presumption of adult certification. The district court ordered that J.C. be certified for prosecution as an adult, and this appeal followed.

## D E C I S I O N

On review of a district court's decision to certify a juvenile to adult court, an appellate court will affirm unless the district court abused its discretion, applying a clearly erroneous standard to the review of factual findings and a de novo standard to questions of law. *In re Welfare of J.H.*, 844 N.W.2d 28, 34-35 (Minn. 2014); *see In re*

5

*Welfare of S.J.T.*, 736 N.W.2d 341, 346 (Minn. App. 2007) ("A district court has considerable latitude in deciding whether to certify, and this court will not upset its decision unless its findings are clearly erroneous so as to constitute an abuse of discretion." (quotations omitted)), *review denied* (Minn. Oct. 24, 2007). This court will not "disturb a finding about whether public safety would be served by retaining the proceeding in juvenile court unless it is clearly erroneous." *J.H.*, 844 N.W.2d at 35.

Under Minn. Stat. § 260B.125, subd. 3 (2014), a presumption applies that appellant should be certified to the district court for adult proceedings because he was 17 at the time of the offense, the offense involved the use of a firearm, and probable cause existed to believe appellant committed the offense. Appellant can overcome this presumption if "by clear and convincing evidence" the retention of "the proceeding in the juvenile court [would] serve[] public safety." *Id.*

A district court must consider the following six factors in deciding whether public safety would be served by certification:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing guidelines, the use of a firearm, and the impact on any victim;

> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;

> (3) the child's prior record of delinquency;

6

(4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice system; and

(6) the dispositional options available for the child.

Minn. Stat. § 260B.125, subd. 4 (2014). The district court must "give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed." *Id.*

**Statutory Certification Factors.** Appellant argues that the district court "misinterpreted and misapplied" the certification statute by improperly focusing on appellant's past behavior in determining whether he is now a threat to public safety. He argues that "the operative standard is not a juvenile's risk to re-offend before treatment but whether EJJ programming and the safeguard of executing an adult sentence would insure public safety." This reading of the statute is inaccurate.

When the statutory certification presumption applies, the district court is directed to apply the public-safety factors in the consideration of "whether the public safety is served by certifying the matter." Minn. Stat. § 260B.125, subd. 4. The public safety factors "are intended to assess whether a juvenile presents a risk to public safety and thus aim to predict whether a juvenile is likely to offend in the future." *In re Welfare of R.D.M., III*, 825 N.W.2d 394, 399 (Minn. App. 2013), *review denied* (Minn. Apr. 16, 2013). Each of the six factors is predicated upon the juvenile's past or current conduct, not predicted future conduct after programming, as urged by appellant. *See id.*

7

(recognizing that public-safety factors "examine the juvenile's past behavior and programming failures," while "others must be read to allow consideration of the juvenile's current conduct"). Embedded in the language of all of the public-safety factors is the notion that past conduct predicts future behavior. *See id.* ("In the end, the [public-safety] factors must show that a risk to public safety exists because the juvenile's behaviors are likely to continue." (quotations omitted)). Thus, appellant's argument that the district court "wrongly applied the statutory criteria to look backward instead of forward" lacks merit. *Cf. In re Welfare of D.M.D.*, 607 N.W.2d 432, 438 (Minn. 2000) (rejecting concept that district court's weighing of public-safety factors must be made according to specific mathematical weights).

Appellant also argues that the district court incorrectly assessed the third public-safety factor, his prior criminal history, by improperly considering his programming history as part of his prior criminal history, and improperly considered evidence of his gang involvement when the record did not support it. When the district court orders certification, it "is not required to make specific findings on each factor" and is only required to "fully investigate[] the matter and carefully consider[] its decision." *Vang v. State*, 788 N.W.2d 111, 116 (Minn. 2010).

A prior record of delinquency is defined to include "records of petitions to juvenile court and the adjudication of alleged violations of the law by minors." *In re Welfare of N.J.S.*, 753 N.W.2d 704, 710 (Minn. 2008). The district court listed five offenses for which appellant was adjudicated delinquent and five other offenses for which delinquency petitions were filed but later dismissed. The district court also included

findings regarding appellant's lack of progress while on probation, his gang affiliation, and the escalation in severity of his offenses. *See In re Welfare of H.S.H.*, 609 N.W.2d 259, 262-63 (Minn. App. 2000) (commenting that prior record of delinquency does not support adult certification when it "fails to show deeply ingrained, escalating criminal behavior that presents a threat to public safety").

Evidence that was properly included in the prior-history factor independently supports the district court's determination on that factor, and the district court's erroneous inclusion of appellant's lack of programming progress in the consideration of his prior record does not merit reversal. *See N.J.S.*, 753 N.W.2d at 710-11 (affirming certification even though district court erred by including juvenile's uncharged incidents from school and institutional records in consideration of juvenile's prior record of delinquency). Appellant does not challenge the district court's analysis on any other factor, and the court's overall consideration of the factors shows that it properly analyzed the factors in reaching its decision. *See Vang*, 788 N.W.2d at 116.

Further, it was not improper for the district court to rely on appellant's gang involvement in considering his prior record of delinquency. The petition for the current offense notes that appellant was with a known gang member when he was apprehended by police. This evidence, coupled with appellant's comment that he possessed the gun for protection and was holding the magazine for another person, support an inference that appellant was involved in gang activity. In addition, even if the district court improperly relied on evidence from sources that were not part of appellant's delinquency record, this error was of little import in light of appellant's overall significant juvenile delinquency

9

history and the court's otherwise proper application of the statutory factors in reaching its decision. *See In re Welfare of P.C.T.*, 823 N.W.2d 676, 685-86 (Minn. App. 2012) (reversing district court's EJJ certification decision when juvenile's prior gang-related felony and current gang-related offense outweighed the other factors), *review denied* (Minn. Feb. 19, 2013); *St. Louis Cnty. v. S.D.S.*, 610 N.W.2d 644, 648 (Minn. App. 2000) (reversing EJJ certification decision when juvenile was extensively involved in gang activity). Appellant's delinquency record is sufficiently significant to warrant adult certification. *See In re Welfare of U.S.*, 612 N.W.2d 192, 196 (Minn. App. 2000) (including "significant" prior juvenile record of nine misdemeanors, two involving firearms, and two felonies).

While application of the statutory certification factors suggests that this may be a close case, the burden was on appellant to overcome the presumption of adult certification by a clear-and-convincing-evidence standard. He did not meet that burden, and we cannot say that the district court abused its discretion by ruling that he should be certified to stand trial as an adult.

***Appointment of GAL.*** Appellant next argues that the district court erred by appointing a GAL and by admitting the GAL's report into evidence at the certification hearing. Under Minnesota Rule of Juvenile Delinquency Procedure 24.01(C), "[t]he court may appoint a [GAL] on its own motion or on the motion of the child's counsel or the prosecuting attorney when the court determines that an appointment is in the best interests of the child." A GAL may be appointed "to act in place of a parent . . . to protect the best interest of the child when it appears, at any stage of the proceedings, that

the child is without a parent . . . ." Minn. R. Juv. Deliq. P. 24.01(A). A district court "shall" appoint a GAL "[i]f the parent . . . is unavailable, incompetent, indifferent to, hostile to, or has interests in conflict with the child's best interests . . . ." *Id.*

The district court did not err by appointing a GAL. Appellant's mother only intermittently attended appellant's hearings and was living in another state at the time of the certification hearing. Although appellant, a minor, was willing to waive both the appointment of a GAL and his mother's attendance at the certification hearing, the district court was free to disregard those waivers when the circumstances demonstrated to the district court that appointment of a GAL was in appellant's best interests. The district court's minor oversight in citing an incorrect statute as authority for its GAL appointment does not affect the validity of the GAL's appointment.

**Affirmed**.