*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1357**

In the Matter of the Welfare of: G. M. D., Child.

**Filed March 11, 2024
Affirmed
Bratvold, Judge**

Blue Earth County District Court
File No. 07-JV-23-2111

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant G.M.D.)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent State of Minnesota)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from the district court's order certifying appellant for adult prosecution, appellant argues that the district court abused its discretion by determining that the statutory public-safety factors weighed in favor of adult certification. Because the record supports the district court's findings, and because the district court did not abuse its discretion by weighing the public-safety factors and certifying appellant for adult prosecution, we affirm.

# FACTS

On June 8, 2023, respondent State of Minnesota filed a juvenile-delinquency petition charging appellant G.M.D. with (1) possession of a pistol and ammunition while under 18 years old under Minn. Stat. § 624.713, subd. 1(1) (2022), (2) possession of a firearm or ammunition after being adjudicated delinquent for a crime of violence under Minn. Stat. § 624.713, subd. 1(2) (2022), and (3) second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1 (2022). The state moved to certify G.M.D. for prosecution as an adult, asserting that a presumption of certification applied.

*The Offenses*

The following summarizes the facts alleged in the juvenile-delinquency petition.[1]

On June 5, 2023, G.M.D. had a "verbal altercation" with "victim 1" in a restaurant parking lot in Mankato. G.M.D. "was the aggressor in the altercation." Uniformed deputies from Blue Earth County Sheriff's Office were at the restaurant. Two plain-clothes agents from the Minnesota River Valley Drug Task Force were in the parking lot and about to enter the same restaurant when they saw the altercation. The agents "noted that [G.M.D.] was holding something heavy in the waistband of shorts that appeared to be heavier than what his gym shorts could hold." Victim 1 "attempt[ed] to walk away multiple times." G.M.D. "took off chasing victim 1," but after "observ[ing] victim 1 speak to [the] uniformed deputies [G.M.D.] then ran across the parking lot in the direction of a green Kia

---

[1] "For purposes of a certification determination, the charges against the child and the factual allegations of the petition are presumed true." *In re Welfare of J.H.*, 844 N.W.2d 28, 38 (Minn. 2014).

Soul." The agents saw G.M.D. reach the Kia, open the rear driver's-side door, pull an object from his waistband, and place it in the vehicle. The agents noted that as G.M.D. "walked away from the vehicle he . . . no longer . . . ha[d] a bulge in his waistband and was no longer holding on to his waistband." He then "entered a white Ford Escape and fled the area by himself."

A deputy spoke with victim 1, who said he did not know G.M.D. When G.M.D. approached him and "racked a round" "with a motion that indicated [G.M.D.] was chambering a bullet in a handgun," victim 1 said, he became afraid that G.M.D. would shoot him.

Agents towed the Kia while waiting for a search warrant. After the agents obtained a warrant, their search of the Kia found "a 9mm semi-automatic handgun under the driver's seat." The handgun "did not contain serial numbers" but "contained one live 9mm round in the chamber and 14 live 9mm rounds in the magazine."

*District Court Proceedings*

In its motion for adult certification, the state contended that the district court should presume that G.M.D. would be certified under Minnesota Rule of Juvenile Delinquency Procedure 18.06, subdivision 2, "[b]ased upon the age of [G.M.D.], the offenses he is charged with and his juvenile delinquency history." G.M.D. was 17 years and 11 months old at the time of the alleged offenses. After a probable-cause hearing later in June 2023, the district court issued an order finding that probable cause supported all three charges in the state's delinquency petition. It also found this was "a presumptive certification matter."

Blue Earth County Community Corrections conducted a certification study. A juvenile-probation officer for Blue Earth County Community Corrections prepared the certification-study report, which recommended that G.M.D. be certified for adult prosecution. A dispositional advisor for the Minnesota Board of Public Defense submitted a memorandum opposing adult certification on behalf of G.M.D.

The district court held an adult-certification hearing on August 1, 2023. The probation officer and dispositional advisor testified. On August 16, 2023, the district court issued its findings of fact, conclusions of law, and order granting the state's certification motion. The district court noted that, if convicted of the charges as an adult, G.M.D. would face a presumptive commitment to prison of 60 months. The district court determined that the statutory public-safety factors favored certifying G.M.D. for adult prosecution and concluded that G.M.D. had "not rebutted the presumption of adult certification." The district court terminated juvenile jurisdiction.

G.M.D. appeals.

## DECISION

G.M.D. argues that the district court abused its discretion by certifying him for adult prosecution and challenges its analysis of two of the six public-safety factors. Generally, the juvenile division of the district court "has original and exclusive jurisdiction in proceedings concerning" a juvenile under 18 years old who is accused of a crime. Minn. Stat. § 260B.101, subd. 1 (2022). But when a juvenile is over 14 years old and is alleged to have committed an "offense that would be a felony if committed by an adult," the district

4

court may certify the juvenile for prosecution as an adult. Minn. Stat. § 260B.125, subd. 1 (2022).

A presumption of adult certification applies if the juvenile "was 16 or 17 years old at the time of the offense" and the alleged offense "would result in a presumptive commitment to prison" for an adult. *Id*., subd. 3 (2022). If the presumption applies, the juvenile has the burden "to rebut this presumption by demonstrating by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.* If the district court determines that the juvenile fails to rebut the presumption, "the court shall certify the proceeding." *Id.* Here, the parties stipulated, and the district court concluded, that this was a presumptive-certification case. G.M.D. was 17 years and 11 months old at the time of the alleged offense, and the presumptive sentence for the alleged offense is a 60-month prison commitment. G.M.D. therefore had the burden to prove that retaining juvenile jurisdiction over him would serve public safety.

Minnesota law provides that a district court must consider six factors in determining whether certifying a juvenile for prosecution as an adult serves public safety:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;
> (3) the child's prior record of delinquency;
> (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice system; and
(6) the dispositional options available for the child.

*Id.*, subd. 4 (2022). The district court must "give greater weight" to the first and third factors. *Id.* "A district court has considerable latitude in deciding whether to certify a case for adult prosecution." *In re Welfare of P.C.T.*, 823 N.W.2d 676, 681 (Minn. App. 2012) (quotation omitted), *rev. denied* (Minn. Feb. 19, 2013).

Appellate courts review a certification decision for an abuse of discretion. *See In re Welfare of H.B.*, 986 N.W.2d 158, 166 (Minn. 2022) (reviewing an order denying certification). Appellate courts will "not disturb a finding that public safety would be served by certification unless it is clearly erroneous." *In re Welfare of N.J.S.*, 753 N.W.2d 704, 710 (Minn. 2008). Under the clear-error standard, an appellate court may not reweigh the evidence, reconcile conflicting evidence, or engage in fact-finding anew. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021). Rather, an appellate court undertakes a "review of the record to confirm that evidence exists to support the decision." *Id.* at 222. A finding of fact "is clearly erroneous only if there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *H.B.*, 986 N.W.2d at 166 (quotation omitted).

A.     **The District Court's Analysis of Factors 1, 2, 3, and 4**

The district court found that factors 1, 2, 3, 4, and 6 weighed in favor of adult certification. G.M.D. does not challenge the district court's determinations on factors 1, 2, 3, and 4. Still, we summarize the district court's findings on these four factors to provide helpful context for our analysis of factors 5 and 6.

6

The district court found that factor 1—"the seriousness of the alleged offense"—favored certification. Minn. Stat. § 260B.125, subd. 4(1). The district court's order described the offense and stated that the district court found "no attempted explanation for [G.M.D.'s] conduct, leaving [it] to assume the most reasonable explanation is simply that [G.M.D.] acted out in violence because the opportunity to do so presented itself." The district court concluded that the "blatant violence in a public parking lot in mid-day, in conjunction with the use of the firearm and the impact on the victim, all indicate that the seriousness of this offense weighs heavily in favor of adult certification."

On factor 2, the district court analyzed G.M.D.'s "culpability . . . in committing the alleged offense" and found it favored certification. *Id.*, subd. 4(2). The district court found that no one else was implicated in "planning [or] carrying out the assault," which required "more than mere isolated bad judgment." G.M.D. first "illegally obtained" possession of a firearm and loaded it before "cho[osing] to bring that firearm out in public where it could be used to inflict violence."

The district court found that factor 3—G.M.D.'s "prior record of delinquency"—favored certification. *Id.*, subd. 4(3). The district court determined that G.M.D.'s prior record shows that "the offense alleged in this certification matter is not an isolated act. Rather, it is part of a pattern of resorting to violence," and the "violence is increasing from physical assault, to the use of replica firearms to commit offenses, and now growing to the use of actual loaded firearms in order to inflict assault."

Factor 4 requires the district court to consider G.M.D.'s "programming history, including the child's past willingness to participate meaningfully in available

programming." *Id.*, subd. 4(4). The district court found that this factor favored certification. The district court found that G.M.D. "had already been previously detained at no less than [six] different detention/secure facilities." Although G.M.D. was "successfully discharged," he "demonstrated a lack of cooperation and noncompliance with programming while on probation" and committed the current offenses while on extended-juvenile-jurisdiction (EJJ) probation.

### B. Analysis of Factors 5 and 6

G.M.D. contends that the district court abused its discretion in analyzing and weighing the evidence for factors 5 and 6. Appellate courts may consider factors 5 and 6 together. *See N.J.S.*, 753 N.W.2d at 711 (analyzing factors 5 and 6 together); *In re Welfare of D.T.H.*, 572 N.W.2d 742, 745 (Minn. App. 1997) (same), *rev. denied* (Minn. Feb. 19, 1998). We consider the district court's analysis of factors 5 and 6 and also discuss G.M.D.'s arguments.

Under public-safety factor 5, a district court considers "the adequacy of the punishment or programming available in the juvenile justice system." Minn. Stat. § 260B.125, subd. 4(5). In G.M.D.'s case, the district court made these findings about factor 5:

> EJJ would extend until [G.M.D.'s] 21st birthday, which will arrive in about 2 years and 10 months from the issuance of this Order. There are punishments and programming available on EJJ that are extensive, including Prairie Lakes Youth Program Secure Detention, among others. However, given the escalation in conduct and the prior failures to comply with programming and probation, this Court is not convinced that

8

the supervision, programming, and/or punishments of less than 3 years will adequately ensure public safety.

Although the district court did not explicitly state that factor 5 favors adult certification, we conclude these findings implicitly show that factor 5 favors adult certification.

Under public-safety factor 6, a district court considers "the dispositional options available for the child." *Id.*, subd. 4(6). Here, the district court found that this factor favored adult certification:

> The dispositional options for this matter include the presumptive adult certification, or in the alternative, ordering that [G.M.D.] be subject to Extended Juvenile Jurisdiction (EJJ) probation. [G.M.D.] is already on EJJ and that was insufficient to dissuade [G.M.D.] from engaging in the offenses alleged herein. EJJ will not adequately ensure public safety. This factor favors adult certification.

G.M.D. begins by arguing that the district court abused its discretion by failing to "consider" Minnesota Correctional Facility (MCF)-Red Wing under either factor 5 or 6: "The district court altogether failed to consider whether the long-term, individualized and youth-focused treatment program at MCF-[Red Wing] was adequate to ensure public safety." G.M.D. points out that the certification-study report stated that MCF-Red Wing would be an "appropriate juvenile placement" for him. He argues that, so long as EJJ programming can adequately ensure public safety, it is "not relevant" that he could also receive services in the adult system. In response, the state argues that the district court was not required to consider "whether there [were] *any* possible options available in the juvenile system"; rather, the district court "was tasked with determining whether any such options are adequate punishments or programs."

9

It is accurate that the district court's written findings do not discuss MCF-Red Wing as an option. But the record shows the district court had ample evidence about MCF-Red Wing as an option for G.M.D. Testimony established that the MCF-Red Wing program—the most likely placement for G.M.D. if he was on EJJ—typically takes between 18 and 24 months and that, if G.M.D. were placed there, it would be for "about 18 months."[2]

Ultimately, the district court concluded that continuing EJJ for G.M.D. would be inadequate to ensure public safety for three reasons, and we consider each of G.M.D.'s arguments about these reasons.

First, the district court determined that "the supervision, programming, and/or punishments *of less than 3 years* will [not] adequately ensure public safety." (Emphasis added.) The district court reasoned that G.M.D. would be released from EJJ on his 21st birthday, which, at the time of certification order, allowed him to be on EJJ for about two years and ten months.[3] And the dispositional advisor testified that G.M.D.'s actual placement time at MCF-Red Wing would be about 18 months. Because the district court found that G.M.D. needed a three-year placement, its conclusion that any juvenile

---

[2] More specifically, the probation officer testified that the adequacy of "the services that [MCF-]Red Wing was able to provide for programming" showed that "neither certification for EJJ or adult certification" was favored. The dispositional advisor testified that G.M.D. "would qualify for the services and resources . . . at Red Wing" and that he would probably be at MCF-Red Wing for about 18 months. The certification study noted "the only appropriate juvenile placement for continued programming is in [MCF-Red Wing] because of [G.M.D.'s] age and criminal history" and added that G.M.D. could receive services in the adult system, as well.

[3] We note that G.M.D.'s available programming time has dwindled since the certification order.

facility—including MCF-Red Wing—would be inadequate is well supported. And "[i]nsufficient time for rehabilitation under the juvenile system is an appropriate consideration when deciding whether to refer the juvenile to adult court." *In re Welfare of U.S.*, 612 N.W.2d 192, 197 (Minn. App. 2000).[4]

Second, the district court rejected EJJ for G.M.D. as inadequate to protect public safety because of G.M.D.'s "escalation in conduct." This conclusion is supported by the record. G.M.D.'s juvenile record includes a misdemeanor for fifth-degree assault in 2018, a felony for second-degree assault with a dangerous weapon in 2019, a gross misdemeanor for harassment in 2021, a misdemeanor for fleeing a peace officer in 2021, a misdemeanor for disorderly conduct in 2022, and a felony for simple robbery that "involved him brandishing a BB gun" in 2022.

The present offenses are three felony charges from June 2023 for possession of a pistol and ammunition while under 18 years old, possession of a firearm or ammunition after being adjudicated delinquent for a crime of violence, and second-degree assault with a dangerous weapon. G.M.D.'s juvenile record, in particular the escalation from primarily

---

[4] G.M.D. also argues that the district court "not only failed to consider the fact that MCF-[Red Wing] provided far more comprehensive and longer-term programming than in adult prison, but it also failed to consider the fact that MCF-[Red Wing] provided youth-focused programming." In support, G.M.D. relies on the dissent from *H.B.*, which states that "EJJ prosecution allows more time . . . for a child to successfully engage with juvenile treatment and rehabilitation." *H.B.*, 986 N.W.2d at 186 (Thissen, J., dissenting). Although this may be accurate as a general proposition, here, G.M.D. has already received rehabilitative programming while on EJJ. Therefore, we are not persuaded that the district court abused its discretion by not specifically assessing the programming at Red Wing versus the programming in adult prison.

misdemeanor to felony offenses, and his transition from nonlethal to lethal weapons support the district court's conclusion that EJJ is an inadequate disposition.

Third, the district court rejected an EJJ disposition for G.M.D. because of his "prior failures to comply with programming and probation." G.M.D. argues that he "successfully completed a chemical dependency program, completed the Truthought program, and participated in mental health therapy." The district court, however, concluded that G.M.D. disregarded programming and probation recommendations after his discharge, and this conclusion is supported by the record. The probation officer testified that G.M.D.'s direction on discharge was to continue with chemical-dependency treatment and therapy, but he resisted doing so. Although G.M.D. completed a new diagnostic assessment, he "did not feel that he needed to participate in [the] programming." He complied with drug testing for only a few weeks and failed to attend his weekly meetings with his probation officer.

G.M.D. also argues that his previous failure on EJJ probation did not predict his future compliance because he had never been ordered to complete a long-term program— such as MCF-Red Wing—which "almost certainly would have increased the likelihood of [his] rehabilitation and success in the community." He also argues the district court failed to consider that, with an EJJ disposition for the pending charges, G.M.D. would face a 60-month stayed sentence, which would be "an incentive not to violate probation."

We are not convinced. It is counterintuitive that a long-term stayed sentence or program term "increase[s] the likelihood of [G.M.D.'s] rehabilitation and success in the community" given that G.M.D. previously failed to meet short-term discharge recommendations. Because G.M.D. violated short-term conditions, we conclude that the

12

district court did not abuse its discretion in finding that G.M.D. is not likely to comply with probation while facing a long-term stayed sentence. We also reject G.M.D.'s argument that his past failures were in "non-secured" facilities and an EJJ placement in a secured facility would better ensure public safety. The record shows that G.M.D. previously has been placed in a secured facility. Also, G.M.D.'s new offense occurred while on probation, not in a correctional facility.

Even if we assume error on factors 5 and 6, we cannot grant relief unless G.M.D. also shows prejudice. *See In re Welfare of S.J.T.*, 736 N.W.2d 341, 352 (Minn. App. 2007) (requiring juvenile appellant to show that district court's error prejudiced its certification decision), *rev. denied* (Minn. Oct. 24, 2007). We conclude he cannot. G.M.D. argues that "the district court's certification decision may have been different had it correctly assessed" factor 5. G.M.D.'s argument is not persuasive given that he accepts the district court's findings on the other four factors favoring certification. The district court found that five of six factors weighed in favor of adult certification. And it found the two factors that must be given greater weight under Minnesota Rule of Juvenile Delinquency Procedure 18.06, subdivision 3—"the seriousness of the alleged offense" and "the child's prior record of delinquency"—weighed in favor of adult certification. Thus, even if we were to conclude that the district court erred in its analysis of factors 5 and 6, this would not lead us to conclude that the district court abused its discretion in ordering adult certification.

Because the record supports the district court's findings on and analysis of factors 5 and 6, and because factors 1, 2, 3, and 4 also favor adult certification and are not challenged on appeal, we conclude that the district court did not abuse its discretion in

certifying G.M.D. for prosecution as an adult because retaining the proceedings under juvenile jurisdiction would not serve public safety.

**Affirmed.**