*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0297**

In the Matter of the Welfare of: A. M. A., Child.

**Filed August 3, 2015
Affirmed
Reyes, Judge**

Anoka County District Court
File Nos. 02JV141049; 02JV141050;
02JV141051; 02JV141052; 02JV141053

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant A.M.A. challenges an order of the district court certifying him to stand trial as an adult on felony charges of aggravated robbery and theft of a firearm. Because the district court properly applied the statutory certification factors and appropriately exercised its discretion in reaching its certification decision, we affirm.

## FACTS

On July 28, 2014, Coon Rapids police officers were dispatched to a SuperAmerica at around 4:00 a.m. after receiving a report that the gas station had been robbed. The gas station employee, D.K., told police that a black male, who appeared to be in his 20s, entered the store. The black male was wearing a dark baseball hat, dark clothing, and a bandana over his face, and carrying a knife and a metal bar. The male ordered employees to put money from the cash register into his backpack. Once the registers were cleared, the male grabbed his backpack and ran out of the gas station.

On August 4, 2014, at around 2:00 a.m., Coon Rapids Police officers were dispatched to the same SuperAmerica and a Walgreens after receiving reports that robberies had occurred. J.M., a Walgreens employee, told officers that a black male, who appeared to be between the ages of 16 and 20, entered the store wearing a ski mask and dark clothing. The male pointed a handgun at J.M. and ordered him to empty the cash registers into a backpack. The male then ran out of the store with approximately $600 in cash.

D.K. was again working when SuperAmerica was robbed for the second time. D.K. stated that, although the male was wearing a ski mask this time, she believed it was the same person from the previous robbery because she recognized his eyes. The male ordered the employees and customers in the gas station to the interior of the cash-register station and instructed the employees to empty the money from the cash registers into a backpack. The male took the backpack and fled the store.

The next day, Coon Rapids police detectives went to appellant's residence after they received a tip that he was involved in the robberies. Appellant spoke with the detectives outside of his home and denied any involvement in the robberies. The detectives asked appellant's mother for permission to search appellant's bedroom for items in connection with the robberies. The detectives discovered a BB gun and a 4.5 millimeter Sig Sauer handgun in appellant's room. They also recovered $500 in cash. These items were seized.

On August 15, 2014, at 12:09 p.m., T.J. reported to Coon Rapids police officers that two handguns, including a semiautomatic pistol, and some ammunition, had been stolen from the trunk of his vehicle. At 10:54 p.m. that evening, officers were dispatched to a residence in Coon Rapids upon a report that a carjacking had just occurred. K.M. and her friends were having a bonfire in the backyard when she noticed a person approaching the gathering. As the person approached the bonfire he pointed a small handgun at K.M. and ordered her to give him her car keys. K.M. described the person as a black male, around 18 years old, wearing dark clothing and a hooded sweatshirt with his face covered.

The male pointed the gun at other people at the bonfire, stating he needed keys to a car. Another guest, K.C., eventually gave him her car keys. The male pointed his gun at K.C.'s back and ordered her to walk to the front of the house to show him her car. Once K.C. pointed out her car, the male got into the vehicle and drove away.

The following day, Coon Rapids Police Officer Steve Beberg was driving to work when he observed someone hiding behind a vehicle in a residential driveway. Officer

3

Beberg got out of his vehicle, identified himself, and displayed his police badge. The person took off running. Officer Beberg recognized appellant and pursued him. Officer Beberg and other uniformed officers who had arrived at the scene were eventually able to stop and detain appellant. They later discovered one of T.J.'s handguns in the area where appellant was running. A search of appellant's home revealed the other stolen gun and ammunition.

The state filed separate juvenile delinquency petitions charging appellant with four counts of aggravated robbery in the first degree and one count of theft of a firearm. The state moved to certify appellant to stand trial as an adult on all charges.

Pursuant to Minn. R. Juv. Delinq. P. 18.05, subd. 3(D), appellant waived his right to have a probable-cause hearing and the district court determined that probable cause was established. The matter proceeded to a three-day contested certification hearing. The district court heard testimony from five people, including appellant's father, a clinical psychologist, and a juvenile probation officer.

Appellant's father described appellant as a "good boy" growing up, and stated that he performed well in school. According to appellant's father, appellant "went off" after he turned 16 years old. Appellant became depressed, performed poorly in school, started using marijuana, and hung out with new friends, of whom his parents did not approve. Appellant's parents encouraged appellant to get counseling or to attend therapy, but he refused. Appellant's father stated that he would allow appellant to live at home, support him, and hold him accountable if appellant was allowed to proceed on extended-jurisdiction juvenile (EJJ) status.

4

The psychologist recommended that appellant be certified to stand trial as an adult on the basis of the seriousness of the offenses, appellant's culpability, and his programming history. The probation officer also recommended that appellant be certified to stand trial as an adult.

In an order evaluating the evidence presented at the certification hearing and applying the six statutory certification factors, the district court determined that five factors favored adult certification. With respect to appellant's programming history, the district court found that appellant "had one prior placement outside of the home prior to his current court detention status" and determined that this factor was neutral. The district court then concluded that "all factors favor certification," noting that two of the certification factors were to be given greater weight. Because it found that the state had demonstrated by clear and convincing evidence that retaining the proceeding in the juvenile court would not serve public safety, the district court ordered that appellant be certified for prosecution as an adult. This appeal followed.

**D E C I S I O N**

On review of a district court's decision to certify a juvenile to adult court, we will affirm unless the district court abused its discretion. *In re Welfare of J.H.*, 844 N.W.2d 28, 34 (Minn. 2014); *see In re Welfare of S.J.T.*, 736 N.W.2d 341, 346 (Minn. App. 2007) ("A district court has considerable latitude in deciding whether to certify, and this court will not upset its decision unless its findings are clearly erroneous so as to constitute an abuse of discretion." (quotation omitted)), *review denied* (Minn. Oct. 24, 2007). We apply a clearly erroneous standard to review factual findings and a de novo standard to

5

review questions of law. *J.H.*, 844 N.W.2d at 34-35. "We will not disturb a finding about whether public safety would be served by retaining the proceeding in juvenile court unless it is clearly erroneous." *Id.* at 35.

## I.

With respect to the aggravated robbery offenses, under Minn. Stat. § 260B.125, subd. 3 (2012), certification is presumptive because appellant was 17 years old at the time of the offenses, the charged offenses carry a presumptive prison sentence under the sentencing guidelines and applicable statutes,[1] and probable cause existed to believe that appellant committed the offenses. Appellant may rebut the presumption of certification "by demonstrating by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *See* Minn. Stat. § 260B.125, subd. 3. If he does so, the juvenile court retains the case as an EJJ proceeding. *See id.*, subd. 8(b) (2012). But if appellant fails to provide sufficient evidence to rebut the presumption, the matter must be certified. *See id.*, subd. 3.

The district court must consider the following six factors in determining whether public safety would be served by certification:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation

---

[1] Under Minnesota's Sentencing Guidelines, the presumptive sentence for first-degree aggravated robbery for someone with zero criminal history points is 48 months executed. Minn. Sent. Guidelines 4.A (2012).

in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;

      (3) the child's prior record of delinquency;

      (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

      (5) the adequacy of the punishment or programming available in the juvenile justice system; and

      (6) the dispositional options available for the child.

*Id.*, subd. 4 (2012). Of these factors, the district court must "give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed." *Id.* The district court examined each of the factors in reaching its certification decision and found that "all factors favor[ed] [adult] certification."[2] On appeal, appellant concedes factors one and two but argues that he rebutted the presumption that the third, fourth, fifth, and sixth factors favored certification. We will address each disputed factor in turn.

## A.    Third factor: the child's prior criminal history

Appellant argues that the district court incorrectly assessed the third factor, his prior criminal history, by improperly considering his "uncharged behavior cited in school records." We agree.

A "prior record of delinquency" includes "records of petitions to juvenile court and the adjudication of alleged violations of the law by minors." *In re Welfare of N.J.S.*, 753 N.W.2d 704, 710 (Minn. 2008). Thus, it was error for the district court to consider uncharged behavior reflected in school records when evaluating this factor. While the

---

[2] We note that the district court found the fourth factor—the child's programming history—to be neutral.

district court did note that appellant had prior offenses consisting of theft, possession of a weapon, and disorderly conduct, these offenses were adjudicated as petty offenses. And appellant was referred to diversion programs for those offenses. Because there is clear and convincing evidence that appellant's prior history does not consist of "deeply ingrained, escalating criminal behavior," *see In re Welfare of H.S.H.*, 609 N.W.2d 259, 263 (Minn. App. 2000), this factor does not support certification and this finding by the district court was erroneous.

**B.      Fourth factor: the child's programming history**

Minn. Stat. § 260B.125, subd. 4(4), directs the district court to consider "the child's programming history, including the child's past willingness to participate meaningfully in available programming." "Available programming" includes "the child's attendance at programming events, completion of the events, and demonstrated behavioral changes correlated with the programming." *In re Welfare of P.C.T.*, 823 N.W.2d 676, 683 (Minn. App. 2012), *review denied* (Minn. Feb. 19, 2013). This factor is not limited to consideration of only formal programming in the juvenile justice system. *J.H.*, 844 N.W.2d at 39. Instead, "a specialized program provided either through the juvenile justice system, or through a non-juvenile justice system setting, that is designed to address a relevant behavioral or social need of the child may be considered by the court in assessing a child's programming history." *Id.* Appellant argues that the district court "abused its discretion when it failed to assign this factor any weight and then went on to conclude that 'all factors favor certification.'"

Appellant is correct in pointing out that the district court erroneously concluded that *all* factors favored certification when in fact it determined that this factor was neutral. However, there is evidence in the record to support the district court's finding that this factor is neutral. Appellant's limited programming history makes it difficult to determine whether appellant meaningfully participated in available programming. On the one hand, there is evidence that appellant attended two diversion hearings for his previous adjudications of petty offenses and that he completed community work service and sent letters of apology. On the other hand, appellant demonstrated defiant and uncooperative behavior during his detention in the juvenile center. The district court did not abuse its discretion in concluding that this factor is neutral.

**C.     Fifth and sixth factors: the adequacy of the programming available and the dispositional options available for the child**

The fifth public-safety factor involves "the adequacy of the punishment or programming available in the juvenile justice system," Minn. Stat. § 260B.125, subd. 4(5), and the sixth public-safety factor considers the dispositional options available for the child, *id.*, subd. 4(6). The district court analyzed these two factors together[3] and concluded that they weighed in favor of certification. In doing so, the district court relied on the psychologist's evaluation. Because this finding is supported by the record and is not clearly erroneous, the district court did not abuse its discretion in determining that these factors weigh in favor of certification.

---

[3] These two factors are often considered together. *See, e.g., In re Welfare of D.T.H.*, 572 N.W.2d 742, 745 (Minn. App. 1997), *review denied* (Minn. Feb. 19, 1998).

In sum, we conclude that the district court did not abuse its discretion when it determined that appellant did not rebut the presumption in favor of certification by demonstrating by clear and convincing evidence that public safety would be served by retaining the proceeding in juvenile court. *See id.*, subd. 3. The district court completed an analysis and made written findings with respect to each factor, and expressly stated that it gave greater weight to the seriousness of the offense. *See Vang v. State*, 788 N.W.2d 111, 116 (Minn. 2010) (stating that when certification is ordered, the district court "is not required to make specific findings on each factor" and is only required to demonstrate that it "fully investigated the matter and carefully considered its decision").

While the district court erred by including appellant's uncharged conduct from his school records in its consideration of appellant's prior criminal history, this error does not warrant a reversal as there remain other statutory factors that weigh in favor of certification. *See N.J.S.*, 753 N.W.2d at 710-11 (affirming certification even though district court erred by including juvenile's uncharged incidents from school and institutional records in consideration of juvenile's prior record of delinquency). Because the district court's findings on four of the public-safety factors, including the seriousness of the offense, are not clearly erroneous and favor certification, the district court properly exercised its discretion when it certified appellant to be tried as an adult for the aggravated robbery offenses.

**II.**

The parties agree that certification on the theft charge is nonpresumptive. *See* Minn. Stat. § 260B.125, subd. 3. For nonpresumptive offenses, the state has the burden

of proving "by clear and convincing evidence that retaining the proceeding in juvenile court does not serve public safety." *Id.*, subd. 2(6)(ii) (2012). Because the district court's determination that four of the six factors weigh in favor of certification is supported by the record, as discussed above, we conclude that the district court did not abuse its discretion when it also certified appellant to be tried as an adult on the theft charge.

**Affirmed.**