*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0418**

In the Matter of the Welfare of: D. M. T., Child.

**Filed August 31, 2015
Affirmed
Halbrooks, Judge**

Douglas County District Court
File Nos. 21-JV-14-1617, 21-JV-14-1585

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant D.M.T.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Chad M. Larson, Douglas County Attorney, Michelle L. Clark, Assistant County Attorney, Alexandria, Minnesota (for respondent State of Minnesota)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

The district court granted respondent State of Minnesota's motion to certify 17-year-old appellant for adult prosecution on seven felony charges. Appellant challenges the certification, arguing that the district court's finding that public safety could not be served with a juvenile prosecution is clearly erroneous. We affirm.

## FACTS

In October 2014, Alexandria Police filed a juvenile delinquency petition charging appellant D.M.T. with seven felonies after he allegedly burglarized two pawn shops, stole thousands of dollars in merchandise, including multiple firearms, and fled the shops in a stolen car that he later then drove into a tree. The state moved to certify D.M.T. for adult prosecution for these charges, and the district court heard the following testimony at D.M.T.'s certification hearing.

Psychologist Richard Ascano, Ph.D., testified that he recently performed a "clinical interview" of D.M.T. to determine if he posed a risk to public safety. Ascano assessed D.M.T. and hypothesized that he suffers from "anxious ambivalent attachment disorder," which causes D.M.T. to abuse drugs and alcohol. Ascano noted that D.M.T. has previously received in-patient treatment to address his maladies, but he stated that D.M.T. relapses into abusing substances and engaging in criminal behavior "almost immediately" upon discharge from treatment. Ascano stated that D.M.T. might benefit from intensive and long-lasting "multisystem therapy." He thought that without this enhanced treatment, D.M.T. would likely continue to self-medicate, which would trigger criminal behavior. Ascano also testified that "guns . . . provide [D.M.T.] with a sense of power."

Probation officer Altendahl testified that D.M.T. has a history of juvenile adjudications and that he has supervised D.M.T.'s probation since he was 14 years old. He noted that D.M.T. initially responds to treatment for his substance-abuse problems, but he immediately relapses upon leaving in-patient care. The officer testified that he did

not believe that the kind of care outlined by Ascano was available in the juvenile system. He also stated that if D.M.T.'s case remained in the juvenile system, D.M.T. could not be confined for the time necessary to obtain successful treatment.

D.M.T. submitted 40 exhibits to the district court, and the hearing ended. The parties submitted additional briefing one week later, and after taking the matter under advisement, the district court certified D.M.T. as an adult to stand trial. D.M.T. challenges that certification.

## DECISION

It is "presumed" that the district court will certify a case for adult prosecution if (1) the juvenile is 16 or 17 years old at the time of the alleged offenses and (2) at least one offense carries a presumptive prison sentence under the sentencing guidelines. Minn. Stat. § 260B.125, subd. 3 (2014). The juvenile may rebut this presumption by providing "clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.* In determining whether public safety is served by certifying the prosecution, the district court "shall" consider six factors: (1) the seriousness of the alleged offense; (2) the juvenile's culpability in committing the alleged offense; (3) the juvenile's prior record of delinquency; (4) the juvenile's programming history; (5) the adequacy of punishment or programming available in the juvenile system; and (6) the dispositional options available for the juvenile. *Id.*, subd. 4 (2014). The district court must give greater weight to the first and third factors. *Id.* If the juvenile does not rebut this presumption, the district court "shall" certify the proceeding. *Id.*, subd. 3.

3

A district court has "considerable latitude" when deciding whether to certify a case for adult prosecution. *In re Welfare of D.T.H.*, 572 N.W.2d 742, 744 (Minn. App. 1997) (quotation omitted), *review denied* (Minn. Feb. 19, 1998). We will not reverse the district court's decision unless its findings are "clearly erroneous." *Id.* (quotation omitted).

D.M.T. concedes that it was "presumed" that the district court would certify his case for adult prosecution. But he argues that he successfully rebutted the statutory presumption because the district court's finding that public safety would not be served by a juvenile prosecution is clearly erroneous. We analyze D.M.T.'s argument under each factor that the district court considered before it certified D.M.T.'s adult prosecution.

**The Seriousness of the Offenses**

The district court found that the charged offenses are "serious" and "continue to endanger the community several months later." The district court found the burglaries particularly serious as D.M.T. targeted the pawn shops "because they deal in firearms." The district court found serious Ascano's testimony that guns provide D.M.T. with a sense of power. In addition, the district court noted that several of the alleged stolen firearms "remain unaccounted for" and therefore "pose a serious risk to the community." The district court found that the firearms could have been used to "seriously injure or kill" any individual confronting D.M.T. during his alleged criminal spree and that the danger of D.M.T. using the guns was high because he was intoxicated. The district court stated that D.M.T. exhibited reckless behavior during the incident when he crashed the stolen vehicle into a tree during a "joy ride," and found the firearms and reckless

4

behavior to be a serious combination. The district court also noted that the alleged crimes had a "substantial impact" on the victim pawn shops because the owners reported thousands of dollars in stolen merchandize and "significant" physical damage to their stores.

D.M.T. asserts that the district court's findings are clearly erroneous because the district court merely "speculat[ed]" that his crimes could have been serious, but the crimes were not serious in fact because no individuals were harmed. He contends that the damage to the pawn shops "was not widespread" and his crime is not in the "uppermost rank of severity." D.M.T. cites no authority for his argument that the seriousness of an alleged crime can be determined only by the actual manifestations of the risk posed by the crimes rather than the possible consequences of the offenses, and we have previously rejected this argument. *See In re Welfare of K.M.*, 544 N.W.2d 781, 784-85 (Minn. App. 1996) (finding offense serious because alleged acts "could have resulted in death or serious injury"); *see also St. Louis County v. S.D.S.*, 610 N.W.2d 644, 648 (Minn. App. 2000) (finding alleged offense serious even in absence of actual physical injury to victim).

Further, D.M.T. does not challenge the district court's finding that the offenses had significant effect on the community because several stolen firearms were still missing. And he overlooks that the district court found this level 8 offense of first-degree burglary particularly serious. *Cf. In re Welfare of J.H.*, 844 N.W.2d 28, 36 (Minn. 2014) (finding level 9 offense of first-degree kidnapping an inherently "serious crime" for juvenile-certification purposes). The district court found this inherently serious crime

5

particularly serious because of D.M.T.'s intoxication and theft of several firearms. And while D.M.T. characterizes the alleged crime as "essentially a property offense," he ignores that the district court found serious the alleged property damage related to his crime. *See K.M.*, 544 N.W.2d at 784 (finding criminal damage to property a serious offense).

D.M.T. allegedly burglarized a pawn shop while under the influence of controlled substances, stole several firearms, and fled the scene in a stolen car which he later recklessly crashed. We affirm the district court's finding that D.M.T.'s seven felony charges are serious offenses and that this factor favors certification.

**Culpability of the Juvenile**

The district court found that D.M.T. was particularly culpable because he admitted to planning the alleged offenses. D.M.T. asserts that the district court ignored the record evidence indicating that a co-conspirator "initiated the events." The district court did not ignore that D.M.T. participated in the alleged crimes with another individual; it considered that evidence but found D.M.T. culpable because, while the idea to commit the offenses may not have originated with him, he participated in the actual preparation, such as obtaining burglar's tools and a stolen vehicle.

D.M.T. also argues that he bears little culpability because he was "under the influence of drugs" while allegedly committing these offenses. He provides no caselaw to support his argument that his voluntary intoxication rendered him less culpable. And D.M.T. overlooks that he told police that he agreed to participate in the alleged crimes before he became intoxicated.

6

We affirm the district court's finding that an individual who engages in advance planning remains culpable for allegedly committing the offense while intoxicated and with the assistance of a co-conspirator.

**The Juvenile's Prior Record of Delinquency**

The district court found that D.M.T. has "a lengthy juvenile criminal history" that includes prior felony-level delinquency adjudications for third-degree burglary and first-degree criminal damage to property. It noted that D.M.T. violated his probation on this latter charge "at least three times." The district court also found that D.M.T. has two delinquency adjudications for assault charges.

D.M.T. asserts that the district court "merely listed" his past offenses and that his past history "is not of such a nature and severity that certification should be ordered." D.M.T. does not provide any caselaw for his assertion, and he misstates the district court's analysis. The district court listed his prior adjudications and compared the number and severity of the adjudications to the existing caselaw suggesting that multiple felony adjudications demonstrate a "significant" history of delinquency.

We affirm the district court's careful consideration of D.M.T.'s record of delinquency and determination that his two prior felony adjudications indicate that a juvenile prosecution does not best serve public safety.

**The Juvenile's Programming History**

The district court found that D.M.T. has participated in eight treatment programs and is "normally very cooperative and compliant" in "highly-structured residential environments." But the district court found that the unopposed testimony and exhibits

demonstrate that D.M.T. "almost immediately regresses" once he leaves treatment. The district court further observed that D.M.T.'s behavior has "steadily worsened" in recent years and that he now engages in "increasingly violent" and "dangerous" conduct while remaining "oppositional." The district court found that D.M.T.'s inability to retain any progress in treatment and his worsening condition favor certification.

D.M.T.'s only challenge to these findings is his assertion contained in a single sentence that the real problem is his "lack of sufficient probation supervision" rather than his lack of amenability to programming. D.M.T. fails to cite to anything in the record supporting his argument, and he does not directly dispute the district court's finding that he struggles when not strictly supervised while physically confined. We affirm the district court's finding that D.M.T.'s inability to retain the benefits of his treatment programs indicates that a juvenile prosecution is insufficient to protect public safety.

**The Adequacy of the Punishment or Programming Available in the Juvenile System and the Dispositional Options Available for the Juvenile**

The district court combined these factors and found that they favor certification. The district court stated that D.M.T.'s underlying mental-health problems and struggles with chemical dependency cannot adequately be addressed by further programming generally, and specifically cannot be addressed in the limited time during which he could be treated in the juvenile system. The district court found that future programming "is unlikely to affect any real change" in D.M.T.'s behavior, and it found that the public could only be protected by his physical confinement. The district court similarly found that the punishment or other dispositional options available are not sufficient to protect

8

public safety because the past juvenile adjudications "have had little or no deterrent effect on [D.M.T.'s] criminal behavior."

D.M.T. argues that the district court erroneously reached these conclusions because the district court "looked backward instead of forward." He asserts that "the proper analysis" is whether his problems "could be safely addressed." We think that the district court engaged in the type of analysis requested by D.M.T. and contemplated by the statute. The district court examined D.M.T.'s recent history with treatment and punishment options, found that his behavior is growing increasingly concerning, and determined that the public could not be protected with a juvenile disposition of his case. D.M.T. provides no support for his claim that the district court cannot rely in part on past experience to project the likely outcome of any future treatment.

D.M.T.'s recitation of the evidence in the record that *could* support a finding that an ideal treatment plan might benefit him is entirely consistent with the district court's findings. The district court previously found that D.M.T. had some success with treatment, but it noted that D.M.T. could not internalize these benefits once he was not constantly receiving rigorous monitoring. The district court observed that his progress in treatment was worsening over time. And the district court noted that while Ascano testified that an ideal treatment regime might benefit D.M.T., nothing in the record suggested that this treatment would be available to D.M.T. following a juvenile adjudication. We affirm the district court's extensive analysis indicating that the juvenile system likely cannot provide D.M.T. with the level of programming that he needs to no longer pose a danger to public safety.

The record does not support D.M.T.'s assertion that the district court made six "conclusory" findings that are "devoid of a sufficient factual and logical basis." The district court carefully laid out its findings in a dense, 14-page order analyzing the evidence under each statutory factor. The district court heard from two witnesses who both provided ambivalent testimony about whether public safety could be served by a juvenile prosecution. The district court cited favorable and unfavorable testimony from both witnesses. It considered the 40 exhibits that D.M.T. submitted, and it cited the most salient exhibits in its findings. The district court analyzed the parties' additional briefing on the question and took the matter under advisement before issuing its findings. The district court analyzed an inherently complex issue that necessarily relies on predicting future events that cannot be determined with absolute certainty. But while doing so, the district court remained mindful that its statutorily mandated duty required it to analyze how its order would serve public safety. The district court indicated that it was sympathetic to D.M.T.'s difficult childhood and chemical struggles. But it concluded that D.M.T.'s actions indicate that he is a danger to others and that a juvenile prosecution would not serve public safety. We do not agree with D.M.T. that the district court's explanation for its decision is anything less than exemplary.

**Affirmed.**