*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0848**

In the Matter of the Welfare of: M. E. G., Child.

**Filed November 24, 2025
Affirmed
Cochran, Judge**

Blue Earth County District Court
File No. 07-JV-25-430

Cathryn Middlebrook, Chief Appellate Public Defender, Laura G. Heinrich, Assistant Public Defender, St. Paul, Minnesota (for appellant M.E.G.)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent State of Minnesota)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Cochran, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this appeal from the district court's order certifying appellant for adult prosecution, appellant argues that the district court abused its discretion in determining whether retaining the proceeding in juvenile court serves public safety. Appellant specifically challenges the district court's consideration of the public-safety factors set forth in Minnesota Statutes section 260B.125, subdivision 4 (2024). Because we conclude

that the district court properly considered the challenged public-safety factors and acted within its discretion in ordering adult certification, we affirm.

## FACTS

The following facts are undisputed and derive from the district court's orders finding probable cause and granting presumptive certification.[1] Late one night in January 2025, appellant M.E.G. and his friends (the group) entered a residence in the College Town neighborhood of Mankato where a birthday party was taking place. The group was not invited to the party. After a confrontation, the group was forced to leave the residence. Later, the group entered the residence again, uninvited, and immediately started physically assaulting the partygoers. M.E.G. was the first person to enter and was identified by witnesses as the primary aggressor. M.E.G. assaulted at least two occupants of the dwelling. The members of the group also threw glass bottles at the partygoers, hitting at least one person.

Following the incident, respondent State of Minnesota filed a juvenile-delinquency petition setting forth six counts. The petition charged M.E.G. with three counts of first-degree burglary in violation of Minnesota Statutes section 609.582, subdivision 1(a), (b), (c) (2024); one count each of second- and third-degree riot in violation of Minnesota Statutes section 609.71, subdivisions 2, 3 (2024); and one count of fifth-degree assault in violation of Minnesota Statutes section 609.224, subdivision 4(b) (2024). The state also

---

[1] Following a contested hearing, the district court found probable cause to support the charges and issued a written order. The district court incorporated that order and the attached memorandum into its order granting presumptive certification.

moved to presumptively certify M.E.G. for adult prosecution on the basis that M.E.G. was 17 years old at the time of the alleged offenses and had committed at least one offense that would result in a presumptive commitment to prison under the Minnesota Sentencing Guidelines. *See* Minn. Stat. § 260B.125, subd. 3 (2024) (discussing presumption of certification). Following a hearing, the district court determined that probable cause supported the charged offenses and ordered a certification study.

In April 2025, the parties appeared for a contested certification hearing. M.E.G. called three witnesses—his mother, who testified about M.E.G.'s childhood; a lieutenant, who testified about available programming at Minnesota Correctional Facility—Red Wing; and a dispositional advisor from the public defender's office, who testified about the sentencing memorandum she prepared that included a discussion of M.E.G.'s social history and alternatives to incarceration. The state called only one witness: M.E.G.'s juvenile probation agent. The agent testified about the certification study she prepared recommending certification of the matter to adult court. Following the hearing, the district court issued a written order granting the state's motion and certified M.E.G. for adult prosecution.

This appeal follows.

**DECISION**

M.E.G. argues that the district court abused its discretion when it granted the state's motion for adult certification.

"When a child is alleged to have committed, after becoming 14 years of age, an offense that would be a felony if committed by an adult, the [district] court may enter an

3

order certifying the proceeding for action under the laws and court procedures controlling adult criminal violations." Minn. Stat. § 260B.125, subd. 1 (2024). The statute provides that "[i]t is presumed that a proceeding involving an offense committed by a child will be certified" for adult prosecution if the child was at least 16 years old at the time of the alleged offense and the offense is one that would result in a presumptive commitment to prison under the Minnesota Sentencing Guidelines. *Id.*, subd. 3. When certification is presumed, the child has the burden of rebutting the presumption "by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.*

In analyzing whether retaining the proceeding in juvenile court would serve public safety, the district court must consider six factors: (1) "the seriousness of the alleged offense"; (2) "the culpability of the child in committing the alleged offense"; (3) "the child's prior record of delinquency"; (4) "the child's programming history"; (5) "the adequacy of the punishment or programming available in the juvenile justice system"; and (6) "the dispositional options available for the child." *Id.*, subd. 4 (2024); *see* Minn. R. Juv. Delinq. 18.06, subd. 3 (listing the same factors). "These factors, which address the nature of the offense and the circumstances of the child, are intended to assess whether a juvenile presents a risk to public safety and thus aim to predict whether a juvenile is likely to offend in the future." *In re Welfare of H.S.H.*, 609 N.W.2d 259, 262 (Minn. App. 2000). In other words, "the factors must show that a risk to public safety exists because the juvenile's behaviors are likely to continue." *Id.*

In considering these factors, the district court must treat the allegations in the delinquency petition as true. *In re Welfare of J.H.*, 844 N.W.2d 28, 38 (Minn. 2014). The

4

district court must also "give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency" than to the other four factors. Minn. Stat. § 260B.125, subd. 4. These six statutory factors "must be applied but are not a rigid, mathematical equation." *In re Welfare of D.M.D.*, 607 N.W.2d 432, 438 (Minn. 2000). Rather, a district court has "considerable latitude" in deciding whether to certify a juvenile for adult prosecution. *In re Welfare of P.C.T.*, 823 N.W.2d 676, 681 (Minn. App. 2012), *rev. denied* (Minn. Feb. 19, 2013).

We review a district court's adult-certification order for an abuse of discretion. *J.H.*, 844 N.W.2d at 34. "We will not disturb a finding about whether public safety would be served by retaining the proceeding in juvenile court unless it is clearly erroneous." *Id.* at 35. A district court's findings of fact regarding public safety are clearly erroneous "only if there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *In re Welfare of H.B.*, 986 N.W.2d 158, 166 (Minn. 2022) (quotation omitted).

In its order, the district court concluded that M.E.G. "has not demonstrated by clear and convincing evidence that retaining the proceeding in juvenile court . . . serves public safety." The district court found that factors two, three, and four favored adult certification and factors one, five, and six favored retaining the matter in the juvenile court. In giving greater weight to the seriousness of the alleged offense (factor one) and the child's prior record of delinquency (factor three) as required by section 260B.125, subdivision 4, the district court determined that the seriousness of the offense "slightly favors denying certification," while M.E.G.'s prior record of delinquency "strongly favors granting

5

certification." Consequently, the district court granted the state's motion to certify M.E.G. for adult prosecution.

M.E.G. challenges the district court's consideration of two of the six factors: the seriousness of the alleged offense (factor one) and the child's programming history (factor four). Minn. Stat. § 260B.125, subd. 4(1), (4); *see* Minn. R. Juv. Delinq. 18.06, subd. 3 (listing the same factors). We address each argument in turn.

*Seriousness of Alleged Offense*

M.E.G. first argues that the district court did not "give greater weight to the seriousness of the alleged offense" as required by section 260B.125, subdivision 4. More specifically, he argues that the district court "abandoned the analysis of the specific facts of this case," and "explicitly stated" that it was not giving this factor more weight when it determined that the seriousness of the offense "only slightly weighed against certification." We disagree with M.E.G.'s interpretation of the district court's findings and order.

Section 260B.125 requires the district court to analyze "the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim." Minn. Stat. § 260B.125, subd. 4(1). In doing so, the district court does not need to "expressly weigh" or "specifically delineate" the weight given to the seriousness of the offense. *J.H.*, 844 N.W.2d at 37. The district court is only required to "identify the statutory basis upon which it relied, and demonstrate that it carefully considered its decision." *Id.*

6

Here, the district court's order reflects that it gave proper weight to this factor, as it carefully considered the seriousness of the alleged offense "in terms of community protection" and based its decision on the specific facts of this case. In its order, the district court specifically discussed that M.E.G. and his group of friends entered the residence without consent and began assaulting partygoers. The district court noted that M.E.G. assaulted at least two people and was identified as the primary aggressor. The district court further noted that, "[a]s a result of the assaults inflicted by [M.E.G.] and his friends," one victim had a bloody nose and lip and another incurred facial swelling and pain. Additionally, M.E.G. and his friends threw glass bottles during the assault. Based on these facts, the district court found the existence of two aggravating factors under the sentencing guidelines—(1) the offense was committed by a group of three or more people and (2) the offense was committed in a location where there was a reasonable expectation of privacy.

Notwithstanding the existence of two aggravating factors, the district court still found that the seriousness of the alleged offense did not favor certification because the record indicated "that, but for the large group . . . being present, the crime would not have occurred at all," and "the nature of this offense does not involve the extreme violation of privacy that necessitates a conclusion that the crime is particularly onerous." The district court also noted that "there is no allegation of a death or a reasonable risk of death," the victim's injuries "were not of a significant nature," and whether the bottle was a dangerous weapon is a fact question for the jury. This detailed analysis reflects that the district court carefully considered the specific facts of this case in the manner directed by the legislature. *See* Minn. Stat. § 260B.125, subd. 4(1) (providing that the district court shall consider "the

7

seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines . . . and the impact on any victim"). And based on these specific findings, the district court concluded that this factor—the seriousness of the alleged offense—considered in isolation "slightly favors denying certification."

The district court's order also reflects that it weighed this factor in a manner consistent with the requirements of section 260B.125, subdivision 4, when it analyzed whether M.E.G. rebutted the presumption that public safety is served by certifying the matter. Subdivision 4 provides that, in weighing the six factors together, "the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision." *Id.*, subd. 4. The district court's order reflects that the district court followed this statutory directive. Specifically, the district court found:

> Of the two factors that are to be given greater weight (Seriousness of Crime and Prior Delinquency Record), one slightly favors denying certification, and the other strongly favors granting certification. Of the four remaining factors . . . , two favor certification and two favor denying certification. While viewing the factors as a whole, but also giving greater weight to the seriousness of the crime and prior delinquency record, this Court concludes that [M.E.G.] has not demonstrated by clear and convincing evidence that retaining the proceeding in juvenile court . . . serves public safety.

This passage of the district court's written order reflects that it gave greater weight to both the seriousness of the alleged offense and M.E.G.'s prior record of delinquency as required by section 260B.125, subdivision 4. Therefore, we conclude the district court did

not abuse its discretion when weighing the seriousness of the alleged offense, and we further conclude that its finding that this factor "slightly favors denying certification" is not clearly erroneous.

*Programming History*

M.E.G. next argues that the district court erroneously determined that his programming history (factor four) weighed against certification. We are not persuaded.

When analyzing this factor, the district court considers "the child's programming history, including the child's past willingness to participate meaningfully in available programming." *Id.*, subd. 4(4). "[A] child's programming history . . . is not limited to formal programming history in the juvenile justice system; instead, it broadly refers to programming history consisting of a specialized system of services, opportunities, or projects designed to meet a relevant behavioral or social need of the child." *J.H.*, 844 N.W.2d at 39. "Noncompliance and failures at numerous types of juvenile treatment and dispositional programs are considerations relevant to the fourth factor, and so is good performance following such programming." *P.C.T.*, 823 N.W.2d at 682 (quotation omitted).

Here, the district court found that M.E.G.'s "programming history is riddled with partial or small successes that have no meaningful impact after the programming is complete," and "[m]any of the programming options available to juveniles have been used (many more than once), and said programming has not curtailed [M.E.G.'s] delinquent conduct." The district court also found that M.E.G. relapsed after completing treatment, committed additional offenses after cooperating with electronic home monitoring (EHM),

9

and "violated probation by committing new offenses and then absconding from supervision for extended periods while on warrant status." Based on these findings, the district court determined that M.E.G.'s programming history "favors granting certification."

M.E.G. argues that the district court abused its discretion when it found that his programming history weighs in favor of certification. M.E.G. acknowledges that he continued to engage in delinquent behavior and struggled with transitioning back to the community after programming but disagrees with the district court's analysis of this factor. M.E.G. argues that he did well when placed in a structured programming setting such as the juvenile detention facility, when supervised on EHM, and when in treatment. He also argues that there were limited programming options available to him because he started probation supervision at a young age and because his mother did not support programming. And M.E.G. argues that, if the district court retained the matter in the juvenile-court system, he would have access to specialized programming that would address his history of abuse and neglect, thereby promoting public safety.

The record reflects that the district court considered these aspects of M.E.G.'s programming history but found that M.E.G.'s post-programming behavior indicated an unwillingness to meaningfully participate in future programming such that this factor weighed against retaining the matter in the juvenile-court system. *See J.H.*, 844 N.W.2d at 37 ("[J]uvenile courts 'have the discretion to weigh the factors in the context they are presented.'" (quoting *D.M.D.*, 607 N.W.2d at 438)). In doing so, the district court properly focused on M.E.G.'s past "willingness to participate" in juvenile programming, including whether his "demonstrated behavioral changes correlated with the programming." *P.C.T.*,

10

823 N.W.2d at 683; Minn. Stat. § 260B.125, subd. 4(4); *see also H.B.*, 986 N.W.2d at 175 (noting this factor does not "analyze the reasons why a juvenile may have failed in programming"). And while it may be possible to weigh some of M.E.G.'s programming successes differently than did the district court, there is nevertheless reasonable evidence in the record to support the district court's findings.[2] We therefore conclude that the district court's finding that M.E.G.'s programming history favors certification is not clearly erroneous, and the district court did not abuse its discretion in its analysis of this factor. *H.B.*, 986 N.W.2d at 166.

In sum, the district court did not abuse its discretion by certifying M.E.G. for adult prosecution. The district court's order reflects that its findings as to both of the challenged public-safety factors are supported by the record and that it gave greater weight to the seriousness of the offense as well as to the history of delinquency as required by section 260B.125, subdivision 4.

**Affirmed.**

---

[2] M.E.G. also argues that the district court erred by making findings about his performance in school. *See J.H.*, 844 N.W.2d at 38-39 (holding programming history does not include behavior at home or school). While the district court did make findings regarding M.E.G.'s school performance, the district court did not rely on these findings of fact in its determination of whether M.E.G.'s programming history supported certification. Therefore, any error by the district court in this regard is harmless. *See In re Welfare of S.J.T.*, 736 N.W.2d 341, 352 (Minn. App. 2007) (concluding that, even if district court erred by considering police report not in evidence, juvenile was not prejudiced because information from police report was not included in district court's conclusions of law and the district court adequately concluded juvenile did not rebut presumption of certification), *rev. denied* (Minn. Oct. 24, 2007).